**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CHARLES E. THORNTON,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 25-cv-1814-NJR** |
| **WEXFORD HEALTH SOURCES, INC., ALISA DEARMOND, JANE DOE MED TECH, ANTHONY WILLS, ADMINISTRATIVE REVIEW BOARD, JOHN DOE #'s 1-10, GRIEVANCE OFFICE JOHN DOES,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Charles E. Thornton, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Thornton's Complaint (Doc. 1), alleging deliberate indifference in prescribing and refilling his Neurontin, was dismissed for failure to state a claim (Doc. 14). Thornton was granted leave to file an amended pleading. In his Amended Complaint (Doc. 15), Thornton again alleges that he experienced delays in the renewal of his Neurontin prescription.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon

1

which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### The Amended Complaint

Thornton alleges that prior to his incarceration he suffered a gunshot wound, leaving bullet fragments near his C2 and C3 vertebrae (Doc. 15, p. 9). Because surgery was risky, doctors instead prescribed him Neurontin for the chronic pain caused by his injuries (*Id.*). Without the medication, Thornton alleges that he suffers with pain that feels like volts of electricity running up and down his spinal column (*Id.* at p. 10). He also suffers from nerve pain in his right shoulder and arm (*Id.*).

On February 28, 2024, while housed at Menard in the West Cellhouse, Thornton received his last dose of Neurontin (Doc. 15, p. 10). He did not receive his new prescription until April 25, 2024 (*Id.*). During the weeks that he went without medication, he suffered from chronic nerve pain in his neck and right arm (*Id.*). It was painful for Thronton to write, kneel, or stand up (*Id.*). Thornton submitted numerous kites to the healthcare unit, informing staff that he was without his medication and requesting that his Neurontin prescription be refilled (*Id.* at pp. 10-11). He spoke to every med tech who made rounds through the unit, informing them that he was in constant pain without his Neurontin (*Id.* at p. 11). He spoke to numerous Jane and John Doe med techs passing out medications (*Id.*). He further alleges that the John Doe Doctor he previously saw before his prescription lapsed failed to inquire about the prescription (*Id.*).

On March 2, 2024, Thornton wrote an emergency grievance indicating that he needed an emergency refill of his Neurontin (Doc. 15, p. 11). John Does in the healthcare

2

unit responded to the grievance noting that the pharmacy refilled the prescription on March 2, 2024, and that it was reordered again on March 26, 2024 (*Id.*). But Thornton maintains that he failed to receive his prescription from any of the unknown defendants until April 25, 2024 (*Id.*). His emergency grievance was denied by Chief Administrative Officer Anthony Wills, the healthcare unit's pharmacy assistant, and John Does at the Administrative Review Board (*Id.*).

On June 4, 2024, Thornton again received his last dose of Neurontin from Jane Doe med tech, a short, white woman with black hair (Doc. 15, p. 12). Thornton asked if his prescription would be renewed, and she told him not to worry about it because the healthcare unit was taking care of the prescription (*Id.*). But on June 5, 2024, Thornton failed to receive his medication. He immediately began submitting kites to the healthcare unit about his medication and spoke to every med tech making rounds through his unit. He also submitted requests to the healthcare administrator and the pharmacy (*Id.*). On June 25, 2024, Thornton submitted a grievance and had a call pass to see John Doe Nurse Practitioner (*Id.* at p. 13). On June 20, 2024, Thornton planned to attend an appointment about his Neurontin, but the healthcare unit appointments were canceled that day (*Id.*). A second appointment scheduled eight days later was also canceled (*Id.*). Thornton's grievance requested that the canceled appointment be immediately rescheduled before his condition worsened (*Id.*). In response to the grievance, the counselor noted that the two appointments were canceled but rescheduled for July 11, 2024 (*Id.* at pp. 13-14). Thornton was seen on July 11, 2024 (*Id.* at p. 14). Thornton alleges that Administrative Review Board officials, including Paige Long, conspired with the healthcare unit and

3

declined to review the grievance (Doc. 15, p. 14). She noted that the grievance was received after the required deadline (*Id*.).

Thornton acknowledges that he was seen in the healthcare unit on July 11, 2024 (Doc. 15, p. 14). Nurse Practitioner Alisa Dearmond examined Thornton (*Id*.). Thornton informed her of his gun shot wound and showed her how difficult it was to kneel, squat, or stand up due to the nerve pain (*Id*.). He informed her of the issues with his right arm and demonstrated his difficulties walking (*Id*. at pp. 14-15). He informed her how long he had been without his medication. Thronton alleges that Dearmond merely looked through his medical records but failed to conduct any kind of exam. Dearmond failed to write a new prescription for Neurontin.

On September 4, 2024, Dr. Comparin wrote a new prescription for Thornton's Neurontin (Doc. 15, p. 15). But Thornton did not receive the medication until October 10, 2024, due to the actions of various unknown med techs who indicated in Thornton's medical record that he was receiving his Neurontin prescription when he actually had not received the medication (*Id*.).

On July 17, 2024, Thornton submitted an emergency grievance, but Anthony Wills declined to label it as an emergency (Doc. 15, p. 15). He received a final response to his complaints on May 22, 2025, but Chief Administrative Officer Kevin Reichert did not sign the grievance until June 10, 2025 (*Id*. at p. 16). He appealed the grievance to the Administrative Review Board, but it was denied.

On November 1, 2024, the med tech on duty skipped Thornton's cell (Doc. 15, p. 16). As a result, Thornton failed to receive his Neurontin on that date (*Id*.).

4

**Preliminary Dismissals**

Thornton refers to numerous John and Jane Doe med techs throughout his pleading. He alleges that he spoke to med techs on a daily basis asking about his access to his Neurontin prescription. He alleges that unknown med techs falsified his medical records to make it appear as though he was receiving his Neurontin in September 2024. He fails to identify these individuals with any specificity, nor does he indicate the number of med techs that he spoke to or who were involved in his care. He merely refers to them in the case caption as John Does (Doc. 15, p. 1) and later labels them as John Does 1-10 (*Id*. at p. 3). Although Thornton may proceed against specific, unknown defendants (e.g. Jane Doe #1 nurse on specific shift, John Doe #2 med tech on specific date), his claims against unknown med techs are too generic to state a claim.

Thornton does refer to one Jane Doe med tech with specificity, noting that the short, dark-haired tech told him on June 4, 2024, that the healthcare unit would take care of the renewal for his Neurontin. He alleges that despite her assurances, he failed to receive his Neurontin the next day and for several months afterwards. But there are no allegations to suggest that the med tech knew that Thornton failed to receive his medication in the weeks after their encounter or that she acted with deliberate indifference in failing to ensure that the renewal order was submitted. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("[l]iability depends on each defendant's knowledge and actions"). His claim against Jane Doe med tech is **DISMISSED without prejudice**.

Thornton also alleges that officials involved in the grievance process improperly denied his grievances. He alleges that Anthony Wills failed to label his grievance as an

5

emergency. He alleges that grievance officials at the prison and the Administrative Review Board denied his grievances or improperly labeled them as untimely. The simple denial or mishandling of the grievances by these officials, however, fails to state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). Thus, any claim against Wills and unknown grievance officials are **DISMISSED without prejudice**.

Thornton also identifies Wexford Health Sources, Inc. as a defendant in the case caption but fails to include any allegations against the company in his statement of claim. A corporation such as Wexford can only be liable if it had a policy or practice that caused the constitutional deprivation. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Thornton fails to point to any policy of Wexford's the led to delays in renewing his prescriptions. Thus, any claim against Wexford is also **DISMISSED without prejudice**.

Finally, Thornton refers to Dr. Comparin as a defendant in his statement of claim. But he failed to label him as a defendant in the case caption. In order to be a party in the case, a plaintiff must identify them in the case caption. *See* FED. R. CIV. P. 10(a); *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005). Further, there are no allegations to indicate that Dr. Comparin acted with deliberate indifference in Thornton's care. Instead, Thornton alleges that Dr. Comparin renewed his prescription for Neurontin but that other, unknown med techs failed to provide him with the prescription. Nothing in the

6

pleading suggests that Dr. Comparin acted with deliberate indifference and any claim against him is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Amended Complaint, the Court designates the following counts:

**Count 1:** **Eighth Amendment deliberate indifference to medical needs claim against Alisa Dearmond for refusing to renew Thornton's Neurontin prescription.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Thornton states a viable deliberate indifference claim against Alisa Dearmond. He alleges that the nurse practitioner examined him and was made aware of his pain levels but failed to renew his Neurontin. As a result, Thornton continued to go without Neurontin for several more weeks until a doctor finally renewed his prescription. His allegations, at this stage, are enough to state a claim against Dearmond.

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

7

## Disposition

For the reasons stated above, Count 1 shall proceed against Dearmond. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Alisa Dearmond: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to defendant's place of employment as identified by Thornton. If defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on defendant, and the Court will require defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If defendant can no longer be found at the work address provided by Thornton, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendant need only respond to the issues stated in this Merit Review Order**.

8

Because Thronton's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Thornton, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Thornton is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  April 7, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**

9

## Notice to Plaintiff

The Court will take the necessary steps to notify the defendant of your lawsuit and serve her with a copy of your Amended Complaint. After service has been achieved, the defendant will enter an appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendant's Answer, but it is entirely possible that it will take **90 days** or more. Once the defendant has filed an Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions, to give the defendant notice and an opportunity to respond to those motions. Motions filed before defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**